IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE A. TEVES,<br><br>    Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant.                             / | No. C 06-4353 MEJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

**I.  INTRODUCTION**

Plaintiff Julie A. Teves ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of Social Security, Defendant Michael J. Astrue[1] ("Defendant"), denying her claim for disability insurance benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  (Dkt. ## 9, 12.)  Having read and considered the parties' papers, the administrative record below, and the relevant legal authority, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment for the reasons set forth below.

**II.  BACKGROUND**

**A.  Procedural Background**

On March 9, 2004, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on March 17, 2003.  (Administrative Record ("AR") 50-52.)  She was 40 years old when she filed her application.  (AR 50.)  On June 9, 2004, the Social Security Administration

---

[1]  Michael J. Astrue is substituted for his predecessor, Jo Anne Barnhart, as Commissioner of the Social Security Administration.

initially denied her application, (AR 24-27), and upheld its denial upon reconsideration on October 5, 2004. (AR 29-33.) On February 17, 2006, following a hearing at which Plaintiff, her lawyer, and vocational expert Gerald Belchick, Ph.D., appeared, Administrative Law Judge ("ALJ") Donald F. Rector found that Plaintiff was not disabled under the Social Security Act. (AR 13-17.) ALJ Rector's decision became the final decision of the Commissioner when the Appeals Council declined to review it on May 25, 2006. (AR 5-8.)

**B.     Summary of Medical History**

Beginning sometime prior to August 2001[2] and continuing until April 2003, Kent L. Sack, M.D., treated Plaintiff for hypothyroidism, stress myositis, and recurring depression." (AR 179.) Following exacerbation of her symptoms in March 2003, Plaintiff was placed on stress leave. (AR 179.) In April 2003, Plaintiff transferred care to Kaiser Permanente, at which time the stress myositis was "acute." (AR 179.)

From June 18, 2003, to March 11, 2004, Plaintiff was treated by Gordon A. Weiss, M.D. (AR 168-176.) On March 11, 2004, Dr. Weiss reviewed diagnostic studies and performed a physical examination. (AR 169-171.) At the time, Plaintiff complained that she could not drive, write, use a computer, or complete normal household tasks. (AR 169.) On examination, Dr. Weiss observed that Plaintiff appeared "healthy" and "in no distress," despite some limitation of ranges of motion and an inability to raise her right arm over her head. (AR 169.) Dr. Weiss' impression notes chronic nonspecific neck pain and probable mild right shoulder impingement. (AR 170.) However, he opined that her complaints were "out of proportion to the findings on exam, imaging studies . . . [and] actual impairment noted on exam." (AR 170.) He recommended that she increase her activities, increase the aggressiveness of her physical therapy, and try to regain the use of her right arm, which he found "very doable." (AR 170.)

On May 14, 2004, S.K. Madidreddi, M.D., performed a consultative examination. (AR 185-87.) Dr. Madidreddi found that Plaintiff had full range of motion in her extremities, no motor,

---

[2] In a letter dated April 16, 2004, Dr. Stack states that Plaintiff had been a "long time patient," but a fire destroyed any records prior to August 14, 2001. (AR 179.)

sensory or reflex abnormalities, and no muscle atrophy or spasm. (AR 186-87.) Dr. Madidreddi diagnosed a right shoulder impingement, but ruled out cervical radiculopathy. (AR 186.) Dr. Madidreddi reported the following Functional Capacity Evaluation:

> Based on the objective findings of this evaluation, this claimant has no restrictions in seeing, hearing, speaking or traveling. No restrictions in using both hands for repetitive tasks. No restrictions in pushing and pulling. She should be restricted from over the shoulder reaching with the right arm which is her dominant arm and she should be discouraged from similar movements with her left arm to minimize the risk of an over use syndrome.
>
> Claimant should be able to lift 20 pounds on a frequent basis and 25 pounds on an infrequent basis using both arms. This would be well within the ability of a receptionist in a dental office.
>
> No further restrictions are needed.

(AR 187.)

From 2003 to 2005, Plaintiff also had mental health treatment at Kaiser. (AR 190-231, 298-335.) Psychological assessments by D. Pollack, Ph.D., indicated there were only mild impairments and no significant limits, except an only-fair ability to adapt to changes in the workplace. (AR 177-78, 181-84, 232-36.)

In March of 2005, Plaintiff was treated by Rama Yarlagadda, M.D., who informed Plaintiff of the absence of any pathology. (AR 265.) However, on May 27, 2005, Dr. Yarlagadda diagnosed fibromyalgia based on multiple tender points, and prescribed medication. (AR 289-94.) In a "Fibromyalgia [RFC] Questionnaire," Dr. Yarlagardda found that she also had cervical radiculopathy. (AR 336.) In the same form, he opined that Plaintiff was incapable of even low stress jobs because her pain constantly interfered with concentration and required her to take long, unscheduled breaks. (AR 337-38.) Dr. Yarlagardda provided no explanation for these limitations, such as the testing of her ability to concentrate or a description of actual ranges of motion on examination. (AR 291, 337-40.)

**C.    The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. §

404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The sequential inquiry is terminated when a question is answered affirmatively or negatively in such a way that a decision can be made that the claimant is or is not disabled. *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir 1990).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(b). Here, ALJ Rector determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on March 17, 2003. (AR 14.)

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act.[3] If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, ALJ Rector determined that the evidence established "medically determinable 'severe' fibromyalgia and right shoulder rotator cuff tendonitis, rule out right shoulder impairment." (AR 14.)

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or equals an impairment in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt P, App. 1. If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, she is conclusively presumed to be disabled. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). Here, ALJ Rector determined that Plaintiff's impairments did not meet the criteria, finding that she had "no limitations in activities of daily living or maintaining social functioning; only mild difficulties in maintaining concentration, persistence, or pace; and there is no evidence of extended periods of decompensation." (AR 14.)

---

[3] At step two, "severe" means any impairment or combination of impairments that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). This is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage in the analysis. *Bowen v. Yuckert*, 482 U.S. 137, 148, 153-4 (1987). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two of the analysis. *Id.* at 158.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's Residual Functional Capacity ("RFC")[4] is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e). Residual functioning capacity refers to what an individual can still do in a work setting, despite limitations caused by medically determinable impairments. 20 C.F.R. § 416.945(a). Here, ALJ Rector determined that Plaintiff has the RFC to perform "light exertion work with no above the shoulder work with her right upper extremity." (AR 15.) Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. 404.1567(b).

In the fifth step of the analysis, the burden shifts to the ALJ to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the medically determinable impairments and symptoms, functional limitations, age, education, work experience and skills. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). Here, ALJ Rector determined that Plaintiff is capable of performing past relevant work as a receptionist. (AR 16.) As such, ALJ Rector determined that Plaintiff is not disabled. (AR 16.)

### III. LEGAL STANDARD

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the court must

---

[4] "Residual functional capacity" or "RFC" refers to the claimant's maximum sustained work capacity for sedentary, light, medium, heavy, or very heavy work. In assessing an individual's RFC, the ALJ must consider his or her symptoms (including pain), signs and laboratory findings, together with other evidence. 20 C.F.R. § 404, Subpt. P, App.2 § 200.00(c).

uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Further, determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.* Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1991) (citation omitted).

## IV.  ISSUES

Plaintiff seeks reversal of the Commissioner's denial of disability insurance benefits, arguing that:

(1) the ALJ improperly rejected the opinions of the treating physician;

(2) the ALJ improperly discounted Plaintiff's credibility; and

(3) the ALJ's RFC and step four findings were not properly supported.

## V.  DISCUSSION

### A.  ALJ Rector Properly Rejected the Opinion of the Treating Physician

Plaintiff first argues that ALJ Rector improperly rejected the opinion of Dr. Yarlagardda. In his opinion, ALJ Rector found a lack of objective documentation in Dr. Yarlagardda's reports, and contrasted this with the other treating evidence and the examination of the consultative examiner. (AR 15.)

When the opinion of a treating or an examining doctor is not contradicted by another doctor, the ALJ may reject that opinion only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, even if contradicted by another doctor, that opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830-31. The ALJ is responsible for resolving any such conflicts in medical testimony. *Magallanes*, 881 F.2d at 750. Similarly, the ALJ is responsible for resolving ambiguities in the evidence. *Id.* An examining physician's findings are entitled to the same weight when the examination is obtained by the Commissioner as when it is procured by the claimant. *Lester*, 81 F.3d at 832.

Further, in considering medical opinions, the ALJ is required to give weight to medical

6

opinions discussing the "nature and severity of [the claimant's] impairments," but not to a physician's ultimate opinion regarding a claimant's disability or employability status.  *See* 20 C.F.R. § 416.927(a)(2); 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.").

Here, the ALJ provided two specific and legitimate reasons for rejecting Dr. Yarlagadda's assessment: (1) it was not supported by any of his treatment notes, and (2) it was inconsistent with the medical findings by Drs. Weiss and Madidreddi.

Although Dr. Yarlagadda diagnosed fibromyalgia and cervical radiculopathy, and opined that Plaintiff is incapable of even low stress jobs, ALJ Rector noted that the degree of limitations assessed by Dr. Yarlagadda "is not supported by any of his treatment notes whatsoever, or any other treating notes."  (AR 15.)  ALJ Rector contrasted this with the other medical evidence of record.  Specifically, the ALJ considered Dr. Weiss' reports, which indicated that Plaintiff had no serious pathology in her neck, thoracic spine or shoulder, and that she needed to increase her physical activites.  (AR 169-71.)  Dr. Weiss opined that Plaintiff's complaints were "out of proportion to the findings on exam, imaging studies . . . [and] actual impairment noted on exam."  (AR 170.)  He recommended that she increase her activities, increase the aggressiveness of her physical therapy, and try to regain the use of her right arm, which he found "very doable."  (AR 170.)

ALJ Rector also considered the records of consultative examiner Dr. Madidreddi, which he found consistent with Dr. Weiss' assessment, with the exception of postural limitations.  (AR 15.)  Dr. Madidreddi found that Plaintiff had full ranges of motion in her extremities and no motor, sensory or reflex abnormalities, and no muscle atrophy or spasm.  (AR 185-87.)  Dr. Madidreddi diagnosed a right shoulder impingement, but ruled out cervical radiculopathy.  (AR 185-87.)  Dr. Madidreddi opined that Plaintiff could do light work, including lifting 20 pounds on a frequent basis, with no overhead reaching.  (AR 188-89.)

As these findings are inconsistent with Dr. Yarlagardda's findings, the Court finds that ALJ Rector properly rejected Dr. Yarlagardda's opinion based on specific and legitimate reasons.

**B.     ALJ Rector Properly Discounted Plaintiff's Credibility**

7

Next, Plaintiff argues that ALJ Rector improperly discounted her credibility with regard to her symptom reporting because he failed to acknowledge her testimonial and written statements.  In his opinion, the ALJ determined that he "cannot find the claimant wholly credible regarding her limitations and symptoms.  She does do light housework.  She says she stopped driving, but she cooks 'if she feels up to it.'  There is no credible evidence for her onset of 'disability.'"  (AR 15.)

A two step analysis applies at the administrative level when considering a claimant's subjective credibility regarding her pain symptoms.  *Smolen v. Chater,* 80 F.3d 1273, 1281-82 (9th Cir. 1996).  First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of pain.  SSR 96-7p.  Once the claimant meets this burden, the second step of the analysis requires the ALJ to evaluate the intensity, persistence, and limiting effects of the claimant's pain to determine the extent to which the symptoms limit Plaintiff's capacity for work.  *Id*.  However, "[w]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  SSR 96-7.

"Pain is subjective in both existence and degree."  *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (citing *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989)).  "Yet despite the inability to measure it objectively, it can have 'severe debilitating effects' - even to the point of disabling a person who does not meet or equal the impairments listed in Appendix 1 and who would not objectively be expected to experience pain to the degree subjectively expressed."  *Johnson*, 60 F.3d at 1433 (citing 20 C.F.R. § 404.1545(e) ("pain or other symptoms may cause a limitation of function beyond ... the anatomical, physiological or psychological abnormalities considered alone")).  Thus, the ALJ cannot discount a claim of "excess pain" without making "specific findings justifying that decision."  *Johnson*, 60 F.3d at 1433 (citing *Fair*, 885 F.2d at 602).  "These findings must be supported by clear and convincing reasons why the claimant's testimony of excess pain was not credible, and must be supported by substantial evidence in the record as a whole."  *Johnson*, 60 F.3d at 1433.  Such specificity is crucial so as to enable effective judicial review.  *Mersman v. Halter,*

1  161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons
2  why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether
3  the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must
4  be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight
5  the adjudicator gave to the individual's statements and reasons for that weight").  Where the ALJ
6  "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those
7  findings are supported by substantial evidence in the record," courts must not engage in second-
8  guessing.  *Fair*, 885 F.2d at 604.

9       Here, ALJ Rector made specific findings, supported by clear and convincing reasons to
10 justify his decision.  First, the ALJ found no credible evidence for her onset of disability, and that
11 she does light housework and cooks "if she feels up to it."  (AR 15.)  Second, ALJ Rector also found
12 that there were discrepancies between the existence of Plaintiff's alleged symptoms "and the
13 documentary evidence set forth in detail in [his] decision narrative."  (AR 16.)  Specifically, as
14 discussed above, ALJ Rector considered Dr. Weiss' assessment, who opined that Plaintiff's
15 complaints were out of proportion to the findings on exam and imaging studies, and recommended
16 that she increase her activities, increase the aggressiveness of her physical therapy, and try to regain
17 the use of her right arm, which he found "very doable."  (AR 15, 170.)  The ALJ also contrasted
18 Plaintiff's subjective complaints with Dr. Madireddi's examination, which noted no restrictions other
19 than over the shoulder reaching with the dominant right arm and similar movements with the left
20 arm to minimize the risk of overuse syndrome.  (AR 15, 187.)

21      Accordingly, the Court finds that ALJ Rector made specific findings justifying a decision to
22 disbelieve Plaintiff's allegations of excess pain, and those findings are supported by substantial
23 evidence in the record.  The Court must not engage in second-guessing.

24 **C.   ALJ RECTOR'S FINDINGS REGARDING PLAINTIFF'S RFC AND ABILITY TO PERFORM PAST RELEVANT WORK ARE PROPER**
25

26     Finally, Plaintiff argues that ALJ Rector improperly reached his findings regarding Plaintiff's
27 RFC and ability to perform past relevant work because, based on her arguments above, he failed to
28                                          9

make the proper findings about the medical and subjective evidence.  Plaintiff provides no legal support for this argument; however, as discussed above, ALJ Rector's findings are proper and, therefore, this argument is without merit.

## VI.  CONCLUSION

Based on the foregoing analysis, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

**IT IS SO ORDERED.**


Dated: December 5, 2008

_____
MARIA-ELENA JAMES
United States Magistrate Judge